**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

KENNETH A. CREASE,

      Petitioner-Appellant,

vs.

DAVID McKUNE; ATTORNEY
GENERAL OF KANSAS,

      Respondents-Appellees.

No. 98-3240

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 96-3085-DES)**

---

David J. Gottlieb, University of Kansas School of Law, Kansas Defender Project,
Lawrence, Kansas, for Petitioner-Appellant.

Jared S. Maag, Assistant Attorney General (Carla J. Stovall, Attorney General,
with him on the brief), Topeka, Kansas, for Respondents-Appellees.

---

Before **SEYMOUR**, Chief Judge, **TACHA**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

      Kenneth Crease, a state prisoner who appeared pro se in the district court

but is now represented by counsel, seeks to appeal from the district court's denial

of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254

(1994).[1] The district court also denied a certificate of probable cause. Mr. Crease asserted that an ex parte conversation between a state trial judge and a juror violated his federal right to be present at all critical stages of his trial. Our jurisdiction arises under 28 U.S.C. § 2253, and we grant a certificate of probable cause and deny the writ.

Background

After a two month trial, including voir dire, in the District Court of Sedgwick County, Kansas, Mr. Crease was convicted in January 1981 of three counts of burglary, four counts of aggravated burglary, five counts of theft, and two counts of felony murder. During one of the burglaries perpetrated by Mr. Crease and one or more companions, a sleeping couple was shot and killed. Although it is unclear who did the actual killing, Mr. Crease was aware that one of his companions carried a gun into the home. He was sixteen years old at the time the crimes were committed, but was certified to stand trial as an adult.

During jury deliberations, an ex parte conversation occurred between the trial judge and one (or possibly two) juror(s). It is this conversation which Mr. Crease asserts as the basis for this habeas action. The facts of the conversation

---

[1] The amendments to § 2254 under the Anti-Terrorism and Effective Death Penalty Act of 1996 do not apply because Mr. Crease filed his petition prior to the date of its enactment.

are set out most fully in Crease v. State, 845 P.2d 27, 30-33 (Kan. 1993), and we summarize to the extent necessary to explain our holding.

Jury deliberations began on January 5, 1981 and continued until January 7. Sometime during the morning of January 7, a juror, Stephanie Brinkley, approached the bailiff and asked to see Judge Ray Hodge. Judge Hodge allowed the bailiff to bring Ms. Brinkley (and possibly another juror, Barbara Poppenhagen) into his chambers.[2] Neither counsel nor Mr. Crease was present. Ms. Brinkley was troubled by the felony murder rule – later recalling that "I couldn't deal with the fact that he was going to be tried for murder even though he didn't commit the act himself," III R. at 59 (District Court of Sedgwick County, Kansas, February 19, 1991) – and told the judge that she wanted to be excused as a juror. See id. at 61-62, 66. According to Ms. Brinkley, Judge Hodge reread some of the jury instructions to her. He said that she was to "use the evidence that was presented in court during the trial and base [her] decision[] upon that." Id. at 62. He also informed her that, under the felony murder rule in Kansas, "when a felony is committed, you're just as guilty as if you actually did it yourself." Id. at 63. According to Judge Hodge, he "admonished her according to the jury instructions that she cannot allow prejudice and sympathy to enter into

---

[2] Although we acknowledge that there is evidence that two jurors spoke with the judge, we hereinafter refer only to Ms. Brinkley.

her deliberation." Id. at 143-44.

Ms. Brinkley left Judge Hodge's chambers feeling that she was "just not going to be released" from jury duty, id. at 78; she still did not "know for sure [how she was] going to vote one way or another." Id. at 66. Her state court testimony indicated that nothing said in chambers prejudiced her against Mr. Crease, see id. at 76; she did not feel that the judge was saying what the verdict should be, see id. at 66; and she felt no pressure from the judge to vote to convict Mr. Crease. See id. at 75. According to Ms. Brinkley, when she returned to the jury room, she said nothing of her conversation with the judge; the other jurors were not aware that she had spoken with him. See id. at 64; see also id. at 194, 198, 202. However, the jury foreman remembered Ms. Brinkley being distraught when she returned from the judge's chambers; she asked him if she had to vote guilty according to the instructions, and he said that they must follow the instructions given to them. See id. at 97.

Immediately after his conversation with Ms. Brinkley, Judge Hodge called the attorneys into his chambers. Mr. Crease was not present. After informing the attorneys of the conversation, he recommended that Ms. Brinkley be questioned to determine her ability to proceed as a juror. See V R. at 2-3 (District Court of Sedgwick County, Kansas, January 7, 1981 (filed February 20, 1991)). Defense counsel objected to such questioning for strategic reasons:

I felt that it would be wise not to challenge her . . . as it was a very difficult, very long case.  And my defense was basically sympathy, as we had a turncoat [juror] . . . .  I felt she was my juror in the case, and it would be wise to leave her on.

III R. at 9.

In the early afternoon, after her ex parte conversation with the judge, Ms. Brinkley submitted the following question in writing:

If it is already pre-determined (it seems) that the defendant is guilty of a crime, whether or not he actually committed the particular act or not, do we as jurors really have a choice in the matter as to whether he is to be judged (by us) guilty or not guilty[?]

The State tried to prove he was in the basement and actually committed the act.  The defense says otherwise.  Are we bound by [Instruction] 21[?]  Do we have a choice?!

Crease, 845 P.2d at 30.  Instruction 21 provided: "A person is criminally responsible for the conduct of another when, either before or during the commission of a crime, and with the intent to promote or assist in the commission of the crime, he intentionally aids or advises the other to commit the crime."  Id.

Shortly after 1:35 p.m., Judge Hodge responded orally in open court to the entire jury:

To answer that question it is contained in the written Instructions in Instruction Number 1.  I will read a portion of that to all of you again.
     "Members of the Jury: It is my duty to instruct you in the law that applies to this case and it is your duty to follow the Instructions. You must not single out one or more Instructions and disregard others.  You should construe each [In]struction in the light of and in harmony with the other Instructions, and you should apply the

- 5 -

Instructions as a whole to the evidence."

Id. The jury resumed its deliberations and reached a verdict at 4:50 p.m.

Although Ms. Brinkley did not agree philosophically with the felony murder instruction, see III R. at 67, she testified that she eventually voted to convict because of pressure from other jurors who wanted to "hurry up and get finished." Id. at 74; see id. at 64-65. In spite of this pressure, Ms. Brinkley was not the only juror to have difficulty with the felony murder rule. According to another juror, the whole jury was troubled by the rule and at various times all voted not guilty, see id. at 207; the turning point came when Judge Hodge responded in court to Ms. Brinkley's question. See id. at 208-10.

Mr. Crease's conviction was affirmed on direct appeal. See State v. Crease, 638 P.2d 939 (Kan. 1982). However, Mr. Crease did not challenge the ex parte conversation because neither he nor appellate counsel was aware of it. The court reporter present at the meeting between Judge Hodge and the attorneys was not the same reporter present during the trial. The transcript ordered for Mr. Crease's direct appeal did not include the conference in chambers. This conference was not transcribed until January 4, 1991.

In August 1988, after learning of Judge Hodge's conversation with Ms. Brinkley, Mr. Crease collaterally attacked his sentence pursuant to Kan. Stat. Ann. § 60-1507, arguing that he was denied his right to be present at all critical

stages of the trial.  Judge Hodge did not allow an evidentiary hearing and dismissed the § 60-1507 motion.  However, the court of appeals reversed and remanded with directions to hold an evidentiary hearing.  That hearing was held in February 1991 before Judge Karl Friedel.  After hearing the testimony, Judge Friedel held that the ex parte conversation was error, but ruled that the error was harmless.  This ruling was affirmed by the court of appeals and the Kansas Supreme Court, the latter specifically holding that "the error was harmless beyond a reasonable doubt."  Crease, 845 P.2d at 35.

Mr. Crease filed his federal habeas petition on February 14, 1996.  The district court applied a plain error standard of review because no contemporaneous objection to the ex parte conversation was made and denied the writ because it could not conclude that a miscarriage of justice had occurred.  Mr. Crease appeals, arguing that (1) the district court erred by failing to review the ex parte conversation for harmless error, and (2) the state cannot meet its burden of showing that the conversation was harmless.

A.  Standard of Review

It is undisputed that the ex parte conversation violated Mr. Crease's federal right to be present at all critical stages of his trial.  This right arises out of the Confrontation Clause of the Sixth Amendment and protected by the Due Process

Clause. See United States v. Gagnon, 470 U.S. 522, 526 (1985); Rushen v. Spain, 464 U.S. 114, 117 (1983). Mr. Crease argues that the district court erred by reviewing the effect of the conversation for plain error rather than harmless error. Relying on United States v. McDonald, 933 F.2d 1519, 1524 (10th Cir. 1991), the district court applied a plain error analysis because Mr. Crease's trial counsel failed to object to the ex parte conversation. We agree with Mr. Crease that the district court used the wrong standard of review.

Initially, we note that the rule of procedural default in habeas cases "is grounded in concerns of comity and federalism; it is not jurisdictional." Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir.), cert. denied, 119 S. Ct. 378 (1998). As the Supreme Court explained in County Court of Ulster County v. Allen, 442 U.S. 140, 154 (1979), if state courts do not "indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim." Where the last state court to consider the federal constitutional claim decides it on the merits, state procedural bar is inapplicable. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991). When Mr. Crease brought his Sixth Amendment claim to the state courts on collateral review, none of the courts refused to hear the claim based on the failure to object, but instead decided the issue on the merits. The Supreme Court of Kansas found that there were exceptional circumstances which excused Mr. Crease's failure to

raise the issue on direct appeal, including the fact that Mr. Crease was never informed of the ex parte conversation by trial counsel, and the meeting between the judge and trial counsel was not transcribed until well after the appeals period. Thus his appellate counsel was not aware of the conversation. The court affirmed the state district court's finding that the trial court erred and yet held that the error was harmless. We may not rely on a procedural rule upon which the Kansas courts did not rely. See Shanks, 143 F.3d at 1319. The district court's reliance on McDonald was misplaced, as that case involved a direct appeal from a federal conviction, rather than a habeas petition.

## B. Harmless Error

Mr. Crease argues that the state cannot meet its burden of showing that the ex parte conversation was harmless. When reviewing a state court determination in a habeas corpus proceeding, a federal court should not grant relief unless the court finds that the trial error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see Calderon v. Coleman, 119 S. Ct. 500, 504 (1998); Crespin v. New Mexico, 144 F.3d 641, 649 (10th Cir. 1998). An error does not have a substantial and injurious effect on a jury verdict unless "it resulted in 'actual prejudice'" to the

habeas petitioner. Brecht, 507 U.S. at 637. "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather . . . whether the error itself had substantial influence." Kotteakos, 328 U.S. at 765. If a reviewing court is in "grave doubt" as to the harmlessness of an error, the habeas petitioner must win. See O'Neal v. McAninch, 513 U.S. 432, 436 (1995); California v. Roy, 519 U.S. 2, 5 (1996). A judge is in "grave doubt" when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." O'Neal, 513 U.S. at 435. Thus, the risk of doubt is placed upon the state. See id. at 438-39.

Mr. Crease asserts that we must presume prejudice from the ex parte conversation. We disagree. In a federal prosecution of a criminal defendant, "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is . . . deemed presumptively prejudicial." Remmer v. United States, 347 U.S. 227, 229 (1954); see United States v. Scisum, 32 F.3d 1479, 1482 (10th Cir. 1994) (applying Remmer presumption to ex parte juror contact with trial judge). "The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." Remmer, 347 U.S. at 229. We disagree

that <u>Remmer</u> established the rule that any ex parte communication with a juror presumptively deprives a criminal defendant of due process under the Fourteenth Amendment. To the contrary, it is established that "the mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right." <u>United States v. Gagnon</u>, 470 U.S. at 526 (quoting <u>Rushen v. Spain</u>, 464 U.S. 114, 125-26 (1983)). We view the <u>Remmer</u> presumption as a rule of federal criminal procedure, rather than a rule of federal constitutional law. Unlike <u>Remmer</u> and <u>Scisum</u>, both of which were direct appeals, Mr. Crease's claim is before us in the context of a collateral attack on a state conviction and sentence. Interests of comity and federalism, as well as "the State's interest in the finality of convictions that have survived direct review within the state court system," mandate a more deferential standard of review in evaluating Mr. Crease's claim. <u>Brecht</u>, 507 U.S. at 635; <u>see</u> <u>Pyles v. Johnson</u>, 136 F.3d 986, 992 (5th Cir.), <u>cert. denied</u>, 118 S. Ct. 2338 (1998); <u>Bibbins v. Dalsheim</u>, 21 F.3d 13, 16 (2d Cir. 1994).

We defer to factual findings made by state courts in habeas actions. According to the applicable portion of § 2254 in effect when Mr. Crease filed his habeas petition, "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction . . . shall be presumed to be correct" unless one of eight enumerated circumstances is established. 28 U.S.C. §

2254(d) (1994). "The substance of the ex parte communications and their effect on juror impartiality are questions of historical fact entitled to this presumption [and the state courts' findings] must be . . . deferred to, in the absence of 'convincing evidence' to the contrary, by the federal courts." Rushen v. Spain, 464 U.S. 114, 120 (1983). We defer to the state court's findings because the resolution of these questions "depends heavily on the trial court's appraisal of witness credibility and demeanor." Thompson v. Keohane, 516 U.S. 99, 111 (1995).

Having reviewed the record, we find no convincing evidence that Mr. Crease was prejudiced by the ex parte conversation. Ms. Brinkley testified that Judge Hodge's statement did not prejudice her against Mr. Crease, that she did not feel he indicated to her how to vote, and that she felt no pressure from the judge to vote to convict. She left his chambers still undecided what to do and finally voted to convict after feeling pressure from other jurors. Although Ms. Brinkley felt that, after her conversation with the judge, she had "no recourse other than to vote guilty," III R. at 76, this was due to the overwhelming evidence of Mr. Crease's participation in the burglary and the law in Kansas regarding the felony murder rule, not to pressure from the judge. We note here that there is no right to jury nullification. See United States v. Thomas, 116 F.3d 606, 615 (2d Cir. 1997) (stating that "the power of juries to 'nullify' or exercise a power of

- 12 -

lenity is just that—a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent"); <u>United States v. Powell</u>, 955 F.2d 1206, 1213 (9th Cir. 1992) (defendants not entitled to jury nullification instructions).

The evidence indicates that the entire jury had difficulty with the felony murder rule as applied to Mr. Crease and that, throughout the deliberations, different jurors wanted to acquit Mr. Crease of the felony murder charges. However, the turning point came not from Ms. Brinkley's ex parte conversation with the judge, but from Judge Hodge's response to Ms. Brinkley's question in open court. The judge's response included the unassailable direction that the jury must follow the instructions and apply them as a whole to the evidence. Thereafter, the jurors agreed that they must convict Mr. Crease of felony murder because he had admitted breaking into the house. <u>See</u> III R. at 209-10. Thus, we are unable to find that the ex parte conversation had a substantial and injurious effect or influence in determining the jury's verdict.

Because Mr. Crease has made a substantial showing of a denial of a federal right, <u>see</u> <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983), we GRANT a certificate of probable cause. <u>See</u> 28 U.S.C. § 2253 (1994). However, for the reasons set forth above, we AFFIRM the district court's judgment.