In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 15-3112

CHARLES KRIK,

*Plaintiff-Appellant,*

*v.*

EXXON MOBIL CORPORATION, *et al.,*

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10-CV-07435 — **Manish S. Shah**, *Judge.*

---

ARGUED DECEMBER 6, 2016 — DECIDED AUGUST 31, 2017

---

Before WOOD, *Chief Judge,* and ROVNER and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge*. Charles Krik has lung cancer. And like some people suffering from a devastating illness, he sought to know if someone or something was to blame. In his case, as in many, there are several sources at which to point a finger. Krik smoked a pack and a half of cigarettes every day for thirty years. From 1954 until 1960 Charles Krik also worked aboard navy vessels removing insulation produced

by Owens-Illinois, Inc., which he claimed exposed him to asbestos fibers. And for two weeks, he worked as an independent contractor at Exxon Mobil's (Mobil) Joliet refinery replacing heaters that Krik claimed were insulated with asbestos. Mobil presented counter-evidence that the insulation at its refinery did not contain asbestos. Nevertheless, Krik's position was that Owens-Illinois and Mobil exposed him to asbestos which was a substantial cause of his lung cancer.[1] Before a district court and jury, the defendants maintained that cigarettes and not asbestos exposure caused Krik's lung cancer. After a seven-day trial, the jury found that cigarettes were the sole cause of Krik's cancer. Krik now claims that two rulings by the district court deprived him of a fair trial. First, he claims that the district court erred by excluding testimony about medical causation from his expert, Dr. Arthur Frank, and second, that he was denied a fair trial when Mobil, with the knowledge of Owens-Illinois, hired a private investigator to secretly conduct an interview of a sitting juror's acquaintance, to verify and investigate information revealed by the juror. Because we hold that neither issue was prejudicial and denied Krik a fair trial, we affirm the judgment of the district court in all respects.

**A. Dr. Frank's expert witness testimony**

The battle over the expert testimony began during pretrial motions. Prior to trial, the defendants filed motions before Judge Lee of the Northern District of Illinois seeking to exclude Dr. Arthur Frank and other witnesses from testifying about a theory of causation often referred to as "each and

---

[1] Krik initially sued many other corporations, but only these two defendants remain. *See* R. 1 (All references are to the record in the district court.)

every exposure theory," "any exposure theory," "the single fiber theory," or "no safe level of exposure theory" among others.[2] These theories posit that any exposure to asbestos fibers whatsoever, regardless of the amount of fibers or length of exposure constitutes an underlying cause of injury to the exposed individual. At the conclusion of the presentation of these pre-trial motions, Judge Lee concluded that Krik had not established that the "any exposure" theory was sufficiently reliable to warrant admission under Rule 702 and the Supreme Court's seminal case on the admissibility of expert witness testimony, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Judge Lee precluded Krik from offering any expert testimony espousing such a theory at trial. Krik does not challenge that ruling through this appeal.

Before trial, the case was transferred to Judge Manish Shah. Despite the earlier *Daubert* ruling, Krik called Dr. Frank at trial, hoping that a newly packaged "cumulative exposure theory" would skirt Judge Lee's earlier ruling on the motion in limine. During voir dire of Dr. Frank, however, Judge Shah concluded that Dr. Frank's testimony was still "not tied to the specific quantum of exposure attributable to the defendants, but was instead based on his medical and scientific opinion that every exposure is a substantial contributing factor to the cumulative exposure that causes cancer." *Krik v. Owens-*

---

[2] In the second part of the motion, Mobil sought to bar Dr. Frank "from offering any specific causation testimony regarding Mobil." R. 140 at 1, pageID 2618. Judge Lee held that "to the extent that Plaintiff will present facts at trial that he was exposed to asbestos at ExxonMobil facilities and Dr[s]. Frank and Parker will rely upon such facts at trial, the experts will be permitted to testify at trial regarding such exposure, subject to the Court's ruling precluding testimony as to the "Any Exposure" theory." *Krik v. Crane Co.*, 76 F. Supp. 3d 747, 756 (N.D. Ill. 2014).

*Illinois, Inc.*, No. 10-CV-07435, 2015 WL 5050143, at *1 (N.D. Ill. Aug. 25, 2015) (hereinafter *Krik*, 2015 WL 5050143 (J. Shah)). He cited, as examples, the following statements of Dr. Frank: "… If there is exposure to a cancer causing agent, that becomes part of the totality of the exposure. Some may contribute more, some may contribute less, but they are all part of the exposure." *Id.* (citing R. 376 at 262, pageId 10135); and "If the exposure took place, it was part of the cumulative exposure that someone had." *Id*. Judge Shah indicated that he was following the pre-trial determination of Judge Lee and that the "cumulative exposure" testimony was no different than the testimony proffered in front of Judge Lee. *Krik*, 2015 WL 5050143, at *1 (J. Shah).

On appeal, we review a district court's decision to deny a motion for a new trial for an abuse of discretion. *United States v. Lawrence*, 788 F.3d 234, 244 (7th Cir. 2015). Whether the district court applied the *Daubert* framework properly is a question we review de novo but we review the decision to exclude or admit the expert witness testimony for an abuse of discretion only. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 835 (7th Cir. 2015). The party seeking to introduce the expert witness testimony bears the burden of demonstrating that the expert witness testimony satisfies the standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Krik does not dispute that the district court identified and applied the appropriate *Daubert* framework, rather, he argues that Judge Shah made an errant factual determination that the cumulative exposure theory was the same as the "each and every exposure" theory that Judge Lee had barred. We there-

fore review this decision and the decision to exclude the cumulative exposure-based testimony for an abuse of discretion. Judge Shah found that the cumulative exposure theory was the same as the "each and every exposure" theory and prohibited testimony based on this theory and the reasoning of Judge Lee supplemented by his own analysis. We agree and therefore conclude that it was not an abuse of discretion to exclude the testimony nor to deny the motion for a new trial.

Subsumed within this question of the expert testimony are really four issues: First, whether the cumulative exposure theory was sufficiently similar to the "each and every exposure" theory such that Judge Lee's pre-trial ruling covered the former theory as well. Second, and relatedly, whether Judge Shah properly followed Judge Lee's ruling. Third, whether Judge Shah abused his discretion by refusing to allow Dr. Frank to testify about a cumulative exposure theory, and fourth, whether he abused his discretion when he refused to grant a new trial. Because these issues are intertwined and overlap, we address them wholesale as we review the propriety of excluding Dr. Frank's testimony.

Any assessment of the admissibility of expert witness testimony begins with Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert*, as together they govern the admissibility of expert witness testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In addition, Federal Rule of Evidence 403 overlays all other evidentiary rules by stating that a court may "exclude relevant evidence if its probative value is substantially outweighed by the danger of … unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

The Supreme Court has interpreted Rule 702 with a flexible standard that boils down to two over-arching requirements for expert witness testimony. The expert testimony must be "ground[ed] in the methods and procedures of science" and must "assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 590–91. *Daubert* requires the district court to act as an evidentiary gatekeeper, ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand. *Id.* at 589. To do this a trial judge must make a preliminary assessment that the testimony's underlying reasoning or methodology is scientifically valid and properly applied to the facts at issue. *Id.* at 592–93. The district court holds broad discretion in its gatekeeper function of determining the relevance and reliability of the expert opinion testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S.

137, 141 (1999). Our circuit has given courts the following guidance to determine the reliability of a qualified expert's testimony under *Daubert*, stating that they are to consider, among other things: "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 844 (7th Cir. 2017); *see also Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000). Despite the list, we have repeatedly emphasized that "no single factor is either required in the analysis or dispositive as to its outcome." *Smith*, 215 F.3d at 719; *see also Kumho Tire Co.*, 526 U.S. at 151–52. The district court may apply these factors flexibly as the case requires. *United States v. Brumley*, 217 F.3d 905, 911 (2000). Indeed *Daubert* itself contemplated a flexible standard with broad discretion given to district court judges. *Daubert*, 509 U.S. at 593.

Judge Lee's pre-trial motion concluded that under both Illinois law and maritime law, a plaintiff must demonstrate that asbestos was a "substantial contributing factor" to his injury. *Krik v. Crane Co.*, 76 F. Supp. 3d 747, 753 (N.D. Ill. 2014) (hereinafter *Krik*, 76 F. Supp. 3d 747 (J. Lee)), *citing Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 493 (6th Cir. 2005) (maritime law); *Thacker v. UNR Indus., Inc.*, 603 N.E.2d 449, 457 (Ill. 1992) (Illinois law). Judge Lee noted that asbestos-induced lung cancer is dosage dependent—that is, the risk of contracting lung cancer from asbestos depends on the length of time of exposure and the amount of exposure. To determine whether any exposure constitutes a substantial contributing factor, therefore, one would have to understand the timing and amount of exposure. But rather than testifying

that the particular dose of asbestos to which Krik had been exposed was a substantial contributing factor to his illness, Judge Lee explained, Dr. Frank's theory was based on a premise that each and every exposure to asbestos, including the first exposure, no matter how de minimis, "is a substantial contribution to the cumulative total." *Krik*, 76 F. Supp. 3d at 753 (J. Lee). As Dr. Frank further explained: "Either it's zero or it's substantial; there is no such thing as not substantial." R. 66-3 at 23, pageID 923. Even one minute of exposure, he opined, would be a substantial contributing factor to a person's ultimate disease. R. 376 at 273–74, pageID 10146-47. Applying *Daubert*, the court concluded that the "any exposure" theory ignored fundamental principles of toxicology that illnesses like cancer are dose dependent. Krik's experts did not plan to offer any evidence about how much asbestos exposure Krik experienced and whether that dosage could have been a substantial contributing factor to lung cancer. In fact Krik's experts readily admitted in their depositions that they had not considered any information about amount of exposure in their analyses. Instead, Dr. Frank's asserted theory would be that any and all exposure to asbestos is a substantial contributing factor to lung cancer. The law of causation, however, required the plaintiff to prove that the *defendants'* acts or products were a "*substantial contributing factor*" to Krik's illness. De minimis exposure is not sufficient. *Krik*, 76 F. Supp. 2d at 753 (Lee) (citing maritime and Illinois law). And substantial exposure that cannot be attributed to a particular defendant is likewise insufficient. Moreover, the experts, as Judge Lee described, had not presented any individualized analysis of the level of asbestos exposure, had provided only generalized citations to scientific literature with no indication that they were

authorities upon which the experts would rely, did not identify any peer-reviewed scientific journal adopting this theory, did not cite any medical studies or discuss an error rate. *Id.* at 754. The experts used the theory with "little to no evaluation of the actual facts of this case." *Id.* In short, Krik failed to bear the burden of demonstrating that Dr. Frank's theory would satisfy the minimal requirements of Federal Rule of Evidence 702 and *Daubert*. Judge Lee thus precluded Krik from offering any expert testimony espousing such a theory at trial.

In light of Judge Lee's ruling barring the use of "each and every exposure" testimony, Krik attempted to repackage Dr. Frank's testimony as being based on a "cumulative exposure" theory. Under this theory, every minute of exposure adds to the cumulative exposure and thus becomes a substantial contributing factor. Judge Shah concluded, however, that the "cumulative exposure" theory was merely more of the same. He followed and then reiterated Judge Lee's finding by noting:

> To find a defendant liable, plaintiff must prove causation attributable to that defendant. It would be misleading and confusing for an expert to opine—particularly using the legal terminology of "substantial contributing factor"— that Krik's cancer was caused by defendants when the foundation for the opinion was that every exposure (without regard to dosage) contributes to cause cancer.

*Krik*, 2015 WL 5050143, at *1 (J. Shah). In other words, causation requires that an expert connect the nature of the asbestos exposure and pair it with a *Daubert*-approved methodology

that can be used to determine whether such an exposure was a substantial cause of the defendant's injury.

We agree that Dr. Frank's cumulative exposure theory was no different from the "each and every exposure" theory in all relevant ways. In fact, at the *Daubert* hearing, Krik's counsel explained how they were the same:

> THE COURT: Looking at the September 16, 2011 expert report … , which states: "The *cumulative* exposures he, meaning Krik, had to asbestos from any and all products containing any and all fiber types would have contributed to his developing these two conditions." … So does he mean as part of this opinion that *any* exposure to asbestos should be considered a substantial factor to Mr. Krik's ailment?
>
> Mr. McCoy: Yes, Judge. That's right. That's how Dr. Frank would say, *any* exposure. All exposures contribute.

R. 295 at 29–30, pageID 7365-66 (emphasis added). Counsel went on to explain:

> … *the cumulative exposure* is considered the cause from the scientific and medical perspective. You don't open up scientific publications and read these articles, and the articles saying, well, this two days doing this is a cause, and this two days doing this is a cause of whatever person or group is being written about. What they always say is that *the cumulative exposure is the cause. So that's why Dr. Frank is saying, each expo-*

*sure is [sic] substantial contribution to that cumulative total.* That's what he's saying. And that's what—that's what his testimony will be.

*Id.* at 33, pageID7369 (emphasis added).

Dr. Frank's own testimony at his deposition about his theory conflated "each and every exposure" with a cumulative exposure theory as highlighted below. During the deposition, Krik's counsel asserted several positions one after another and asked his opinion on each one. He agreed with each of the following statements:

- "Once the cancer has been attributed to asbestos, *each exposure* can be considered a substantial contributing cause of lung cancer."

- "The *cumulative exposure t*o asbestos from *each and every* product of any and all fiber types contributes to asbestos caused lung cancer."

- It is virtually never possible to know the exact dose from any product, but it is recognized that *any exposure* above zero is a contributing factor to the *cumulative exposure*."

- "Since the exposures are *cumulative,* individual exposures cannot be ruled out as a cause."

- "No minimum duration is needed for an asbestos exposure to be a cause if the cancer is attributed to *cumulative exposure*."

R. 328-3, 167–68, pageID 8733 (emphasis added).

Based on Dr. Frank's own testimony and Krik's counsel's position, Judge Shah readily and correctly concluded that the

cumulative exposure theory was no different from the "each and every exposure" theory that had been excluded at the motion in limine:

> as became clear during a voir dire of the witness, his causation testimony was not tied to the specific quantum of exposure attributable to the defendants, but was instead based on his medical and scientific opinion that every exposure is a substantial contributing factor to the *cumulative* exposure that causes cancer. *See*, Trial Tr. at 262:13–16 ("… if there is exposure to a cancer-causing agent, that becomes part of the totality of the exposure. Some may contribute more, some may contribute less, but they are all part of the exposure."); *Id.* at 262:8–9 ("If the exposure took place, it was part of the *cumulative* exposure that someone had."). This "cumulative exposure" testimony was no different than the testimony proffered at the *Daubert* stage. *See Krik,* 76 F.Supp.3d at 752–53 (quoting plaintiff's counsel as describing the testimony as one based on cumulative exposure)

*Krik*, 2015 WL 5050143, at *1 (J. Shah) (emphasis added).

Thus, Judge Shah made clear that he was following Judge Lee's previous ruling when he made a determination in line with that ruling—that is, that both theories are the same for purposes of determining causation:

> Judge Lee addressed the "cumulative exposure" testimony proposed by the plaintiff in his opinion. And at pages 7 to 8 of his opinion, he

> quotes plaintiff's counsel as saying that cumu-
> lative exposure is the cause, and that what Dr.
> Frank is saying is that each exposure is a sub-
> stantial contribution to the cumulative total.
> Judge Lee then held that, "This is not an ac-
> ceptable approach for a causation expert to
> take."
>
> ***
>
> That is the "each and every exposure" theory
> that Judge Lee has barred, and so Dr. Frank can-
> not give a similar response to a hypothetical in
> this case. … So I am not expanding Judge Lee's
> ruling in any way. I am simply implementing it.

R. 336 at 4–6, pageID 9409-9411. *See also* R. 376 at 354, PageID 10227 ("As was clear when Judge Lee said that it is not an acceptable approach for a causation expert to take, namely … to take an approach based on cumulative exposure that's informed by an each-and-every exposure opinion, it remains clear to me in light of the factual proffer that Dr. Frank's cumulative exposure testimony is based on the each-and-every-exposure theory above … .")

To summarize, the principle behind the "each and every exposure" theory and the cumulative exposure theory is the same—that it is impossible to determine which particular exposure to carcinogens, if any, caused an illness. In other words, just like "each and every exposure," the cumulative exposure theory does not rely upon any particular dose or exposure to asbestos, but rather all exposures contribute to a cumulative dose. The ultimate burden of proof on the element of causation, however, remains with the plaintiff. *Shelton v.*

*Old Ben Coal Co.*, 933 F.2d 504, 508 (7th Cir. 1991); *Nolan v. Weil-McClain*, 233 Ill. 2d 416, 435 (Ill. 2009). Requiring a defendant to exclude a potential cause of the illness, therefore, improperly shifts the burden to the defendants to disprove causation and nullifies the requirements of the "substantial factor" test. The Sixth and Ninth Circuits have likewise excluded these cumulative and/or "each and every exposure" theories for similar reasons. As the Ninth Circuit explained:

> such a theory of liability would render the substantial-factor test essentially meaningless. Allowing causation to be established through testimony like [the expert's] would "permit imposition of liability on the manufacturer of any [asbestos-containing] product with which a worker had the briefest of encounters on a single occasion." This is precisely the sort of unbounded liability that the substantial factor test was developed to limit.

*McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1177 (9th Cir. 2016) (internal citations omitted). *Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 493 (6th Cir. 2005) ("The requirement, however, is that the plaintiff make a showing with respect to *each* defendant that the defendant's product was a substantial factor in plaintiff's injury … . A holding to the contrary would permit imposition of liability on the manufacturer of any product with which a worker had the briefest of encounters on a single occasion.")

As Owens-Illinois points out in its brief, more than thirty other federal courts and state courts have held that this cumulative/"any exposure" theory is not reliable. *See* Brief of Owens-Illinois at 46–47 (citing cases); Notice of Supplemental

Authorities, Appellate Court Record at 70. The district court did not err and certainly did not abuse its discretion by excluding this testimony.

The final piece of Krik's expert witness argument is that the district court errantly excluded a document entitled "the Helsinki document," which Krik's counsel sought to offer to support the "cumulative exposure" theory. As with the other evidentiary decisions, we review this decision for an abuse of discretion. *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 722 (7th Cir. 2003). The Helsinki document is a statement developed at an international public policy conference in Helsinki in 1997 by consensus by a group of nineteen experts in the field of asbestos disease. R. 412-4 at 1, pageID . One proposition within the Helsinki document states that "[c]umulative exposure on a probability basis should thus be considered the main criteria for the attribution of a substantial contribution by asbestos to lung cancer risk." R. 412-4 at 4, pageID 13657. No party established that the Helsinki criteria came from a learned treatise or was the result of any scientific studies. As Dr. Frank himself testified, the document came from the consensus of a number of experts and, indeed, Dr. Frank disagreed with some of the statements in the document, particularly the document's probability-based methodology that concludes that the "likelihood that asbestos exposure has made a substantial contribution increases when the exposure increases." *Id.* Dr. Frank did not refer to the document, let alone rely on it. Judge Shah concluded that the generalness of the document would end up being unfairly prejudicial and would confuse the jury. Specifically, Judge Shah explained:

> As a set of consensus principles announced by an international public policy conference, these

criteria were not substantive evidence of causation; rather, they were materials that could be relied upon by an expert. In this case, the Helsinki Criteria provided a backdrop to the history of the study of asbestos and disease, and fodder for cross-examination of defendants' experts. But they were not admissible as independent exhibits of substantive evidence or as a foundation for inadmissible causation testimony. Moreover, based on the ruling excluding unreliable and non-case-specific causation testimony, *Krik*, 76 F. Supp. 3d at 753–54, it would have been confusing and unfairly prejudicial to allow the Helsinki Criteria to stand as evidence from which a jury could infer defendants' liability as to causation. Finally, because the criteria were discussed during testimony several times during the trial, the limitation on the use of one article during the direct examination of Frank did not render the entire trial unfair to the plaintiff.

*Krik*, 2015 WL 5050143, at *1, n.3 (J. Shah). Many other courts have rejected the Helsinki criteria for similar reasons. *See, e.g., Rockman v. Union Carbide Corp.*, No. CV RDB-16-1169, 2017 WL 3022969, at *5 (D. Md. July 17, 2017); *Bell v. Foster Wheeler Energy Corp.*, No. CV 15-6394, 2016 WL 5847124, at *3, n.3 (E.D. La. Oct. 6, 2016), *reconsideration denied,* No. CV 15-6394, 2017 WL 876983 (E.D. La. Mar. 6, 2017); *Watkins v. Affinia Grp.*, 2016-Ohio-2830, ¶ 37, 54 N.E.3d 174, 182; *Matter of James Wilson Assoc.*, 965 F.2d 160, 173 (7th Cir. 1992); *United States v. Dixon*, 413 F.3d 520, 524–25 (5th Cir. 2005); *Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841, 862 (E.D.N.C. 2015); *Betz v. Pneumo*

*Abex*, *LLC*, 44 A.3d 27, 47, 55 n.35 (Pa. 2012); *Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332, 356–57 (Tex. 2014). We cannot say that it was an abuse of discretion for the district court to do likewise.

**B. The juror investigation issue**

During jury selection, the prospective jurors were asked both collectively and individually if they recognized anyone involved in the case, including the parties and potential witnesses. Juror McGregor reported that she did not know anyone on the list. The next day, however, McGregor delivered a note to the court in which she stated: "While I do not know Mr. Krik personally we might have been at a birthday party for a former pipefitter and a good friend of mine last year. His name is Bob Scamen. I just wanted you to be aware of this. I did not think about this until the ride home last night." R. 349 at 3, pageID 9547.

The court read the note to counsel for all parties. Krik's counsel responded, "From plaintiff's end, I don't see that poses any problem." R. 375 at 108, pageID 9980. Outside the presence of the jury, the Judge questioned both Krik and McGregor about the events set forth in the note. Krik told the court that he did not know Bob Scamen and that he did not think he was at the birthday party. McGregor stated that she was not sure whether she encountered Krik at Scamen's birthday party, that Scamen was her only pipefitter friend, and that her association with him would not improperly influence her. The defendants moved to remove McGregor from the jury, but the district court denied their motion as well as a subsequent motion for a mistrial. We review a district court's decision to deny the request for a new trial for an abuse of discretion. *United States v. Hilliard*, 851 F.3d 768, 778 (7th Cir. 2017).

After the jury returned the verdict, Judge Shah met with the jurors to thank them for their service. During that conversation, McGregor revealed that she had learned that an investigator, whom she believed to be working for the defense, had contacted her friend Scamen to ask about his birthday party. No one had ever approached the court about such an investigation, and thus it came as a surprise to the district court judge. Consequently, several days later the court, sua sponte, scheduled an unusual post-trial status conference in which the judge advised all counsel of the information he had received from juror McGregor. Counsel for Mobil confessed to having sent out the investigator, admitting in the process that it researched the permissibility and found nothing directly on point, and that it had considered advising the court but opted against it. R. 399-11 at 3, pageID 12731. The defense counsel further admitted that it was aware of the risk that the investigation might have an impact on a sitting juror, that it might be deemed to be an invasion of her privacy, and that it was willing to take the risk nevertheless. *Id.* at 4-5, pageID 12732-33. Owens-Illinois was also aware of the investigation, but neither defense counsel informed Krik's counsel.

Krik argues that the investigation prejudiced the trial and filed a motion requesting a new trial. Krik's arguments can be summarized as follows: the questioning of Scamen could have influenced McGregor by intimidating her, by causing her to worry about her privacy and potential harassment, and by distracting her with details of a private investigation during the course of a trial.

To obtain a new trial based on improper contact with a juror, the complaining party must show prejudice. *United States v. Olano,* 507 U.S. 725, 739 (1993) (the ultimate inquiry is "Did

the intrusion affect the jury's deliberations and thereby its verdict?") The party seeking a new trial bears the burden of demonstrating the likelihood of prejudice, and it is a heavy burden at that. *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 876 (7th Cir. 2011).

In order to determine whether there was such prejudice, the Supreme Court dictates that in the face of allegations of juror influence, the court should hold a hearing in which the complainant has the opportunity to prove actual bias. *Smith v. Phillips*, 455 U.S. 209, 215 (1982). But the hearing must walk a fine line. Our system stringently protects the confidential deliberations of juries both for the sake of finality and lest jurors be chilled from frank discussion in their deliberations and subject to continual harassment by those wishing to set aside a verdict. *See, e.g. Tanner v. United States*, 483 U.S. 107, 119–20 (1987). This protection is embodied in Federal Rule of Evidence 606(b) which prohibits most testimony about what influenced a juror. The rule states:

> **(b) During an Inquiry Into the Validity of a Verdict or Indictment.**
>
> **(1) Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a

juror's affidavit or evidence of a juror's state-
ment on these matters.

**(2) Exceptions.** A juror may testify about
whether:

**(A)** extraneous prejudicial information was im-
properly brought to the jury's attention;

**(B)** an outside influence was improperly
brought to bear on any juror; or

**(C)** a mistake was made in entering the verdict
on the verdict form.

Fed. R. Evid. 606.

To balance those competing interests between the re-
quired hearing and Rule 606(b)'s prohibitions, a court must

> limit the questions asked the jurors to whether
> the communication was made and what it con-
> tained, and then, having determined that com-
> munication took place and what exactly it said,
> to determine—without asking the jurors any-
> thing further and emphatically without asking
> them what role the communication played in
> their thoughts or discussion—whether there is a
> reasonable possibility that the communication
> altered their verdict.

*Hall v. Zenk*, 692 F.3d 793, 806 (7th Cir. 2012) (citing *Haugh v.
Jones & Laughlin Steel Corp.*, 949 F.2d 914, 917 (7th Cir. 1991)).

The district court determined that no hearing was re-
quired in this case, both because Krik had not asked for one,
and more importantly, there was no dispute as to the exist-
ence or content of the communication. *See United States v.*

*Sanders*, 962 F.2d 660, 673 (7th Cir. 1992) (no hearing required where questioning jurors would not have revealed additional information). The only question is one that cannot be helped by a hearing—whether there is a reasonable possibility that the jury's verdict was altered by the investigation in any manner. That question could only be answered by asking the jurors the quintessential forbidden question as to what role the communication played in their thoughts or discussion. *See Hall*, 692 F.3d at 806.

In this case, the district court determined that:

> There was no prejudice to Krik in Mobil's interview of Scamen. In this context, prejudice is demonstrated through conduct that leads to a compelling inference of external pressure to return a verdict unfavorable to the movant. No such inference is reasonable here because defendants did not directly contact the juror and the subject of their interview with Scamen was entirely independent of the merits of the case.

*Krik*, 2015 WL 5050143 at *3 (J. Shah). The district court surveyed the types of contact that might be deemed prejudicial—attempted or perceived bribes, exposure to extraneous information directly concerning liability, threats, indirect communications suggesting a party's guilt, and external contact that forces a verdict. *See Id.* (citing cases). The court noted that conduct that has no obvious implication on the outcome of the trial is not prejudicial.

Despite our holding in this case, we note that in general investigating a sitting juror is fraught with danger—such an

investigation could be seen by the juror as intimidation or har-
assment. Such an investigation might lead a juror to be con-
cerned that the continued investigations might reveal embar-
rassing or private details of her life, or worry that even a be-
nign short investigation might be just the beginning of a much
more thorough and invasive one. This could breed resent-
ment, anxiousness, or distract a juror from the task at hand.
*See Sinclair v. United States*, 279 U.S. 749, 765 (1929) ("The mere
suspicion that he, his family, and friends are being subjected
to surveillance by such persons is enough to destroy the equi-
librium of the average juror and render impossible the exer-
cise of calm judgment upon patient consideration.") It could
also be viewed by a court as a bad faith attempt to purposely
create prejudice and thus have an unwanted juror removed
from the jury. In this case, just after McGregor sent her note,
the defendants moved unsuccessfully to have her removed
from the jury. A cynical court might view the investigation of
the juror as a back-door attempt to create prejudice. Moreo-
ver, there is no reason why counsel for Mobil could not have
asked the court for permission to conduct this limited inves-
tigation. From the discussion during the post-trial proceed-
ing, it appears that Mobil's counsel was either hoping that its
investigation would not be discovered or banking on the pos-
sibility that it could ask for forgiveness later rather than be
denied permission up front. We do not condone such behav-
ior and would encourage, as the district court proposed, that
such a practice be evaluated by the court's rules committee or
chief judge. We also do not think that, in the normal course of
events, a judge's admonition that "anything that you have
seen or heard outside the courtroom is not evidence and must

be entirely disregarded" cures this particular potential problem. The curative instruction is unlikely to remedy the ills of a distracted, unnerved, or embarrassed juror.

For this case, however, we need not rule about the propriety of such a practice because we have determined that there was no prejudice to Krik and that the investigation could not have altered the course or outcome of the trial. The investigator questioned McGregor's friend and not McGregor. McGregor herself notified the court about the birthday party, thus indicating that she recognized that it might be relevant, and decreasing the chance that its revelation would bring about any embarrassment or surprise for her. As the district court noted, the "nature of the investigation was relatively benign and there is no proof that prejudice was reasonably likely." *See Krik*, 2015 WL 5050413 at *4 (J. Shah). Moreover, the facts of this case are far from that of *Sinclair*, upon which Krik relies. In *Sinclair*, the jurors themselves were surveilled from the moment they left the courtroom until they went to sleep. *Sinclair*, 279 U.S. at 758. In this case, an investigator approached a non-juror and asked a few benign questions that had no bearing on the substance of the case and there was no evidence that the juror was intimidated or pressured by the investigation.

In determining whether a party was prejudiced, a court also may consider the strength of the party's case. *See Hall*, 692 F.3d at 807 ("If, hypothetically, the legitimate evidence presented by the State in a habeas petitioner's case was overwhelming, and the trial judge in such a case gave a stern pre-verdict warning to the jurors to only consider facts that were presented during trial, concerns about the prejudicial impact

of extraneous information might be lessened."). As we concluded above, Krik's proffered expert testimony on causation did not meet the standards required under Federal Rule 702 and *Daubert* and without it his case was fatally weak. *Krik*, 2015 WL 5050413 at *4 (J. Shah). Krik was not prejudiced by Mobil's investigation because judgment in favor of the defendants was inevitable once it became clear that Krik could not prove causation.

The Appellee's Motions to Strike Appellant's Letter of Supplemental Authority is denied. The decision of the district court is affirmed in all respects, including the assignment of costs and fees.