**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 2, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JASON P. BRISCOE,

    Defendant - Appellant.

No. 23-3109
(D.C. Nos. 6:22-CV-01116-EFM &
6:18-CR-10031-EFM-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

Jason P. Briscoe moved to vacate his sentence under 28 U.S.C. § 2255 because

a court information-technology ("IT") technician went into the jury room during

deliberations after jurors requested help in operating video equipment in the room.

The district court denied the motion but granted a certificate of appealability

("COA").  *See* 28 U.S.C. § 2253(c)(1)(B) (requiring a COA to appeal "the final order

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

in a proceeding under section 2255"). Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we affirm.

## I.

Officers arrested Briscoe one morning after he ran from a traffic stop through a trailer park. Briscoe was a passenger in the car police pulled over. When caught, Briscoe had two cell phones in his hand and a bullet in his pocket. Police recovered a handgun where an officer thought Briscoe had thrown it—between two trailers, just beyond and across from a hole in a trailer's skirting. Back at the police department, the car's driver told detectives that Briscoe had a red duffel bag with drawstrings when he picked him up. The detectives went back an hour after officers took Briscoe into custody and searched his flight path, finding nothing of interest. After that, an officer and the detectives reviewed dash-cam video of the traffic stop and concluded that Briscoe carried something when he ran from the car. The detectives searched the flight path again after officers took Briscoe into custody and found a maroon bag a foot from where police recovered the handgun. The bag had drawstrings, white lettering, and imagery, and contained a gun, ammunition, marijuana, methamphetamine, and drug paraphernalia. The items had no useful fingerprints, and police did not test them for DNA.

Prosecutors charged Briscoe with possession with intent to distribute 50-plus grams of methamphetamine, firearm possession in furtherance of a drug-trafficking crime, and felon ammunition and firearm possession. At his trial, the government presented the evidence described above and a video extracted from one of the cell

2

phones Briscoe had when he fled from officers. That video depicted a woman in a room with a table on which there appeared to be two firearms and other objects. The government also presented two photos from the video. Briscoe stipulated that his legs appeared in one of them. A Bureau of Alcohol, Tobacco, Firearms, and Explosives agent testified that the objects in the video—guns, ammunition, drugs, and drug paraphernalia—were similar to those officers found in the maroon bag and to the other gun Briscoe allegedly discarded as he fled.

Briscoe gave multiple reasons to doubt the bag was his: the driver said Briscoe's bag was red and testified he knew the difference between red and maroon; it would have been very difficult to place the bag into the hole while running with two cellphones, another gun, and a police officer close behind; if he had placed the bag in the hole, officers would have found it sooner; and the item Briscoe held in the photo from the dash-cam video did not appear to have drawstrings, white lettering, or white imagery, and did not look like a bag at all.

The jury convicted Briscoe on all counts. On appeal, we granted the parties' joint motion to remand to vacate multiplicitous counts and for resentencing. *See United States v. Briscoe*, 822 F. App'x 863, 863 (10th Cir. 2020). On remand, the district court amended its judgment and resentenced Briscoe to 220 months imprisonment.

Three years after the trial, Briscoe filed his § 2255 motion with new counsel. Briscoe focused on the fact that the district court permitted the attorneys to consult with the jurors after the trial concluded. In a declaration attached to the § 2255

3

motion, Briscoe's trial counsel stated that she learned the jury asked for and received assistance in viewing video evidence in slow motion, "frame-by-frame," a viewing method it did not have during trial.  R., vol. I at 671.  According to counsel, the jurors said the slow motion helped them reach a unanimous verdict.  Based on these allegations, Briscoe asserted that the technician's assistance with the video equipment violated his Sixth Amendment right to an impartial jury.  He also claimed trial counsel's failure to move for a new trial based on the post-verdict information about the outsider's presence violated his Sixth Amendment right to effective assistance of counsel.[1]

After a hearing on the parties' discovery proposals, the district court authorized them to contact the law clerk who worked for the judge during Briscoe's trial, the district court's sole information-technology employee ("IT technician" or "technician"), and the six jurors who agreed to be interviewed.[2]  After conducting the interviews, the parties stipulated that the video jurors sought help in viewing was the video police extracted from Briscoe's cell phone.[3]  The parties also stipulated to

---

[1] In addition, Briscoe argued that the outsider's presence in the jury room violated his constitutional right to due process and his right to be present during all stages of his trial under Federal Rule of Criminal Procedure 43.  He also asked the district court to consider cumulative error.  But he only requested a COA on his Sixth Amendment claims.  We therefore do not address his other claims.

[2] At a status conference on the § 2255 motion, the district court stated, "we pretty much just have one IT guy in the courthouse here."  R., vol. III at 47.

[3] This stipulation clarified trial counsel's recollection that the jurors had asked for help slowing down the dash-cam video.

some agreed-upon facts about what happened in the jury room, the most salient being that the IT technician was in the jury room for 5 to 20 minutes (although neither he nor the law clerk had any helpful recollection of the event), the technician helped get the video equipment working, a jury member operated the equipment, and the jury viewed the video repeatedly frame-by-frame. R., vol. I at 748–51. It does not appear the district judge was contemporaneously aware of what occurred.

After further briefing, the district court denied the § 2255 motion. As for the impartial-jury claim, the district court concluded Briscoe had shown no constitutional violation or, if there was a constitutional violation, that the IT technician's presence in the jury room had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted). As for the ineffective-assistance claim, the district court determined that Briscoe's trial counsel had not rendered objectively deficient assistance because it would have been proper for the district court to deny any request that Briscoe or his attorney attend the IT technician's video equipment demonstration and any objection to the jury playing the video in slow motion.

The district court granted Briscoe a COA on his Sixth Amendment claims.

## II.

### A.

"In considering the denial of a § 2255 motion for post-conviction relief, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011).

5

B.

The Sixth Amendment guarantees "the accused . . . the right to a . . . public trial, by an impartial jury." U.S. Const. amend. VI. "If a defendant's right to an impartial jury has been violated, he is entitled to a new trial." *Stouffer v. Duckworth*, 825 F.3d 1167, 1178 (10th Cir. 2016). As he did in the district court, Briscoe argues that the IT technician's presence in the jury room violated this right. Briscoe argues that a presumption of prejudice outlined in *Remmer v. United States*, 347 U.S. 227 (1954), applies here and that the government failed to rebut it. Briscoe also contends the government must show any error was harmless under *Brecht*'s "substantial and injurious effect or influence" standard.

i.

In *Remmer*, an unknown person allegedly told a juror during trial that the juror "could profit by bringing in a verdict favorable to the [defendant]." 347 U.S. at 228. After the jury convicted him, defendant moved for a new trial. The trial court denied the motion without holding a hearing. The Ninth Circuit affirmed because the defendant had not shown prejudice. Reversing, the Supreme Court held that a presumption of prejudice applied:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.

6

*Id.* at 229.  The Court further held that this "presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant."  *Id.*

Factually, *Remmer* differs from Briscoe's case.  *Remmer*'s bribe "went to the heart of the trial's integrity."  *Howell v. Trammell*, 728 F.3d 1202, 1214 (10th Cir. 2013).  Here, according to the parties' stipulations, two jurors reported that a juror ran the video equipment multiple times, including the "frame-by-frame."  R., vol. I at 750.  There is no evidence the IT technician was present when the jurors repeatedly viewed the cell-phone video in slow motion.  Thus, nothing in the record shows the IT technician's assistance went to "the heart" of the "integrity" of Briscoe's trial.  *Remmer* therefore does not direct a conclusion that the IT technician's actions violated Briscoe's right to an impartial jury.  Despite the differences from *Remmer*, we must nevertheless consider whether its prejudice presumption applies.

We first acknowledge that the presumption may not apply in § 2255 cases at all.  The government points to two cases declining to apply the presumption where state prisoners sought habeas relief under 28 U.S.C. § 2254.  *See Malicoat v. Mullin*, 426 F.3d 1241, 1250 (10th Cir. 2005) ("In habeas corpus proceedings, [the *Remmer*] presumption generally does not apply."); *Crease v. McKune*, 189 F.3d 1188, 1193 (10th Cir. 1999) (declining to presume prejudice under *Remmer* and instead applying *Brecht*'s "more deferential standard of review" based on "[i]nterests of comity and federalism, as well as 'the State's interest in the finality of convictions that have

survived direct review within the state court system'" (quoting *Brecht*, 507 U.S. at 635)).  We have not yet addressed whether the *Remmer* presumption applies in § 2255 cases, and we need not do so today.  Even assuming *Remmer*'s presumption could apply in a § 2255 case, we conclude that it *does not* apply here.

The district court declined to apply the *Remmer* presumption, reasoning that the IT technician's jury communications were not "private" but "expressly authorized pursuant to the 'directions of the court made during trial,' specifically" the district court's statement to the jury that "'there will be someone in the jury room that will instruct you how to' access the evidence that was submitted in 'an electronic medium.'"  R., vol. I at 793 (first quoting *Remmer*, 347 U.S. at 229, then apparently quoting R., vol. I at 498).

Briscoe resists this conclusion, pointing out that during a status conference on his § 2255 motion, the district court explained its "general practice" was to have an "IT guy" go "into the jury after they retire to deliberate and say[], 'Here's how the system works and here's what you do.'"  R., vol. III at 11.  Briscoe argues that the district court's direction that someone would instruct the jury how to work the jury room's equipment "did not expressly contemplate or notify counsel that [an] unsworn, uninstructed technician might enter the room after deliberations had begun and remain there for 5–20 minutes to help the jurors examine a particular exhibit."  Aplt. Opening Br. at 35.

We disagree.  The district court's statement to the jury in open court that there would be someone in the jury room to instruct them how to access electronic

8

evidence made the IT technician's contact with the jury both pursuant to "the instructions and directions of the court made during the trial" and "with full knowledge of the parties," *Remmer*, 347 U.S. at 229. The district court's statement put the jury, the parties, and counsel on notice that it would provide necessary assistance with the technology so the jury could access evidence submitted electronically. The district court's later explanation that its "general practice" was to have an "IT guy" provide initial instruction to the jury in all cases, R., vol. III at 11, does not mean it limited its jury statement about technical assistance to an initial tutorial. The district court's statement reasonably implied that it would provide tech assistance both initially and on an as-needed basis. Thus, the IT technician did not intrude into the jury room unauthorized and there is no basis to presume prejudice. As the Supreme Court observed, "it is the law's objective to guard jealously the sanctity of the jury's right to operate as freely as possible from outside **_un_**authorized intrusions purposefully made." *Remmer v. United States*, 350 U.S. 377, 382 (1956) (emphasis added). We therefore conclude that *Remmer*'s rebuttable prejudice presumption, even it applies in § 2255 cases, does not apply here.

Neither case Briscoe primarily relies on, *Little v. United States*, 73 F.2d 861 (10th Cir. 1934), and *United States v. Freeman*, 634 F.2d 1267 (10th Cir. 1980), leads to a different conclusion.

In *Little*, the jury asked for a copy of the jury instructions, and the judge "instruct[ed] the stenographer to attend in the jury room and read the instructions in their entirety from beginning to end, with no repetition of any part, or emphasis on

9

any part." 73 F.2d at 864. We rejected the notion that the defendant had to prove prejudice "where error occurs which, within the range of a reasonable possibility, may have affected the verdict of a jury." *Id.* at 866. We concluded such an error had occurred because the court knew "nothing of what went on while the stenographer was in the jury room," and it was "entirely possible that a shorthand character was misinterpreted" in a way that changed the case's outcome. *Id.* at 867.

Here, it is not "within the range of a reasonable possibility" that the IT technician's presence in the jury room "may have affected the verdict." *Id.* at 866. The type of error that concerned the *Little* court is absent here. Unlike the stenographer's oral recitation of the written jury instructions in *Little*, which risked misreading or improper emphasis, the video the IT technician enabled the jury to view in slow motion spoke for itself. Furthermore, the stenographer in *Little* presumably heard all of the trial testimony and conceivably could have formed an opinion of the defendant. Here, nothing suggests the IT technician was at all familiar with Briscoe, the case, or the significant role the cell phone video played in tying Briscoe to the items in the maroon bag.[4]

*Little* had several absolute pronouncements, such as "no one should be with a jury while it is engaged in its deliberations," *id.* at 864; "[t]o permit various persons, under one *pretext* or another, to be with the jury in its deliberations is to open the

---

[4] We emphasize that we consider whether it was reasonably possible that the IT technician's contact with the jury affected the verdict solely to determine whether that conduct warrants a prejudice presumption, not whether the contact in fact affected the verdict.

door to grave abuse and to strike directly at the heart of the system," *id.*, (emphasis added), and "[n]o *outsider* has any business in the jury room; much harm could result, and that is enough," *id.* at 867 (emphasis added). But it premised these statements on the absence of any recognized exceptions to the general rule of disallowing non-jurors to be present in the jury room after deliberations have begun: "Without exception, as far as we are advised, such procedure has been held to be error." *Id.* at 864. *Remmer*'s later carve-out for private communications or contacts with the jury that the trial court authorizes with the parties' knowledge is one such exception. And because we conclude that the district court met that exception here, the IT technician was not an "outsider," *id.* at 867, nor was his presence in the jury room "pretext," *id.* at 864. Consequently, we reject Briscoe's view that *Little* supports applying a presumption of prejudice here.

We likewise reject Briscoe's *Freeman* argument. There, the district court sent an FBI agent who testified for the government into the jury room during deliberations to help operate audiotape equipment without notifying counsel. 634 F.2d at 1268–69. Vacating the convictions, we rejected the government's argument that the defendants had shown no prejudice, noting that "[t]he sanctity of jury proceedings must be preserved" and that "[t]he danger of improper influence adheres in every contact between *an interested party* and a jury." *Id.* at 1270 (emphasis added). Here, the IT technician was not "an interested party." In drawing this distinction, we do not suggest that prejudice to a defendant can never arise where a disinterested party contacts a juror or the jury without authorization. But because we hold that for

11

presumption purposes the IT technician's assistance in the jury room could not reasonably have affected the verdict, we conclude that *Freeman* does not support applying a prejudice presumption.[5]

ii.

When a § 2255 movant alleges a violation of his constitutional rights, we apply harmless error. *See United States v. Driscoll*, 892 F.3d 1127, 1132 (10th Cir. 2018). Habeas petitioners cannot get relief for a constitutional trial error unless the "'error had substantial and injurious effect or influence in determining the jury's verdict'" akin to "'actual prejudice.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946); *United States v. Lane*, 474 U.S. 438, 449 (1986)). We grant relief only if we have 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" *Davis v. Ayala*, 576 U.S. 257, 267–68 (2015) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (further internal quotation marks omitted)).

---

[5] Because of our holding we need not consider whether later Supreme Court cases affect the *Remmer* presumption. *See, e.g., United States v. Scull*, 321 F.3d 1270, 1280 n.5 (10th Cir. 2003) (collecting cases discussing whether *Smith v. Phillips*, 455 U.S. 209 (1982), and *United States v. Olano*, 507 U.S. 725 (1993), reconfigured or narrowed *Remmer* such that the presumption now may be a matter of district court discretion, but applying *Remmer* "[i]n the absence of Supreme Court authority to the contrary"); *see also United States v. Robertson*, 473 F.3d 1289, 1294 (10th Cir. 2007) (qualifying *Remmer*'s presumption of prejudice in case of contact with non-sequestered juror by requiring the defendant to "demonstrate 'that an unauthorized contact created actual juror bias'" (quoting *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997)).

The district court required Briscoe to show prejudice under *Brecht*. The parties contest whether this was proper. Briscoe contends that under *United States v. Dominguez Benitez*, 542 U.S. 74, 81 n.7 (2004), "the Government has the burden of showing that constitutional trial error is harmless because [when] it comes up on collateral review, the heightened interest in finality generally calls for the Government to meet the more lenient *Kotteakos* standard." The government, conversely, relies primarily on *Brecht*'s statement that habeas petitioners "are not entitled to habeas relief based on trial error unless *they can establish* that it resulted in 'actual prejudice.'" 507 U.S. at 637 (emphasis added) (quoting *Lane*, 474 U.S. at 449).

We need not resolve this issue. Even if Briscoe is correct that the government must move the evidentiary needle to a point that shows an error was harmless under *Brecht* (as opposed to a § 2255 movant having the burden), it has done so here for the reasons stated below.

iii.

When a district court inquires into a verdict's validity, Federal Rule of Evidence 606(b)(2) permits jurors to testify only to "whether (A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form." Otherwise, "a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental

13

processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1). Courts therefore use an objective test to assess whether contact with a deliberating jury prejudiced the defendant, taking into consideration the entire record, the contact's substance, and information of which the jurors were properly aware. *See United States v. Hornung*, 848 F.2d 1040, 1045 (10th Cir. 1988).

"Not every incident involving [juror] bias requires a new trial. The test is whether the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *Stouffer v. Duckworth*, 825 F.3d 1167, 1178 (10th Cir. 2016) (brackets, ellipsis, and internal quotation marks omitted). "Surmise and suspicion may not be used to assail the integrity of a jury" because we "presume[] that jurors will be true to their oath and will conscientiously observe the instructions and admonitions of the court." *Id.* (internal quotation marks omitted). In even potentially suspicious circumstances, we require "something more than unverified conjecture." *Id.* at 1179 (brackets and internal quotation marks omitted). As *Brecht* stated, "[t]here must be more than a 'reasonable possibility' that the error was harmful." *Davis*, 576 U.S. at 268 (quoting *Brecht*, 507 U.S. at 637).

Even assuming that the IT technician's contact amounts to "potentially suspicious circumstances," *Stouffer*, 825 F.3d at 1179 (internal quotation marks omitted), Briscoe's argument fails. The interviews with the jurors and the IT technician show nothing more than "[s]urmise and suspicion" that the technician's work had a substantial and injurious effect or influence on the jury's verdict. *Id.* (internal quotation marks omitted). Jurors recalled that the technician spent

14

somewhere between 5 and 20 minutes in the jury room, showed the jury how to

"work the equipment *and then left*." R., vol. I at 749 (emphasis added). The jurors

could not recall whether the technician said anything or whether the jury deliberated

in his presence. But one juror "thought the jury wasn't supposed to talk about the

case." *Id.* "The jurors watched the video many times, twenty times maybe,"

stopping and starting "it many times, and watched it frame-by-frame." *Id.* at 750

(internal quotation marks omitted). Two jurors reported that another juror, possibly

the foreman, ran the video equipment after the IT technician fixed the problem. The

IT technician did not specifically recall the event.

This evidence strongly suggests the jurors did not discuss the case with the IT

technician and that the IT technician was not present when the jury repeatedly viewed

the video.[6] There is simply no evidence that any juror discussed the case with the

technician, which is consistent with the district court's repeated instructions that the

jury should not discuss the case with anyone outside the jury, *see* R., vol. I at 789–90

(quoting relevant oral and written trial instructions). The investigation here turned

up no evidence on the harmful side of the evidentiary scale. Thus, we have only

"unverified conjecture" that the jury's verdict lacked integrity, *Stouffer*, 825 F.3d

at 1179 (internal quotation marks omitted), based largely on the lack of an

affirmative statement that the technician did not communicate or behave in any way

---

[6] The likelihood that the IT technician left before the jury repeatedly viewed the video distinguishes this case from another case Briscoe relies on, *United States v. Monserrate-Valentín*, 729 F.3d 31, 57–60 (1st Cir. 2013), where it was clear the technician remained in the jury room during playback of an audio recording.

that might have rendered Briscoe's trial unfair. We therefore conclude that the government moved the needle to the harmless side of equipoise, and we do not harbor "grave doubt" that the IT technician's presence in the jury room "likely [a]ffect[ed]" the jury's verdict. *O'Neal*, 513 U.S. at 435.

C.

In his other Sixth Amendment claim, Briscoe argued his trial counsel ineffectively assisted him by failing to move for a new trial after learning of the technician's entry into the jury room during the post-verdict consultation with the jurors. The district court rejected this claim, reasoning his trial counsel's performance was "not objectively deficient" because the district court could properly have denied both Briscoe's request that he or his attorney attend the technician's demonstration of how to operate the video equipment and Briscoe's objection to the jury playing the video in slow motion. R., vol. I at 807. We uphold the district court's conclusion, but take a different approach.

Defendants must show both "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense" to prevail on an ineffective-assistance-of-counsel claim. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To meet the prejudice prong, "the defendant [must] affirmatively prove prejudice." *Id.* at 693. To do that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

16

Briscoe has not affirmatively shown prejudice. Briscoe's prejudice argument depends in part on applying the *Remmer* presumption and the heavy burden it imposes on the government to rebut the presumption, as opposed to the more lenient *Brecht* standard that applies in the § 2255 context. But we concluded *Remmer*'s presumption does not apply here. And as the foregoing shows, there is nothing more than speculation that the IT technician's presence in the jury room affected the verdict. The evidence certainly does not suggest a reasonable probability the outcome would have been different had trial counsel moved for a new trial based on the assistance the technician provided in the jury room. We therefore affirm the district court.

Entered for the Court


Joel M. Carson III
Circuit Judge